Please introduce yourself first and then proceed. Daniel Coyne along with Matthew Daniels and Elizabeth Leib were appearing on behalf of the Appellants. We've asked Leib to reserve five minutes for the public. Your Honors, the Appellants before you today are five convicted sex offenders, each of whom have already served an Illinois Department of Corrections sentence, each of whom suffer from profound mental disabilities that severely inhibit their intellectual functioning and dilute their perceptions of reality. Four of the five have previously been found unfit to stand trial, some on more than one occasion. One has been found not guilty by reason of insanity. To put the argument in context, it's necessary to give a very brief overview of their backgrounds. Mr. Weekly. Well, I don't know that we need too much background because we've read the briefs and I think your briefs were very thorough. But I do have just an overall question. What's the aim of this fitness request? What's it supposed to do to this commitment issue? And what's your objective? The objective would be to restore them to fitness. Four of the five that were previously found unfit to stand trial were restored. Well, let me ask you this. Are you saying that they're not receiving any kind of care as civil detainees in the facilities where they're at? All of them are pretrial detainees currently. And there is no effort being made by DHS to restore them to fitness. Are you saying that the civil commitment trial could not go forward, or that part of your claim, that it could not go forward given their current mental state? They are not able to assist counsel. They do not have decisional capacity. Do you know whether the state is intending to go forward on this commitment trial in light of their lack of fitness? There has been no indication from the state that they are not. I can only assume that the case would be set for trial and go forward. And so is the purpose to get the right medical assistance for your clients? The purpose would be to restore them to fitness so that they can go forward. But there's an implication there that without this proceeding, they wouldn't be restored to fitness. That's correct. There's nothing going on right now to help them? There is not. They are merely civil detainees at this point pretrial. None of them have elected to take treatment, so they're not being treated for anything. Essentially, they're being warehoused. They are being treated in order to manage them in the institution, but they are not being treated the way, for example, the Department of Human Services at the forensic unit at Elgin would treat someone to try and restore them to fitness. Well, if they wanted treatment, isn't it true that they could receive treatment? If they knew they needed treatment, yes. How is that going to happen? I'm sorry? How is that going to happen, that they knew that they needed treatment? They would have to be remanded to a forensic center instead of the detention center to be able to be restored to fitness, just as any other unfit respondent would be or unfit criminal defendant. When a criminal defendant is unfit, often they do not know that they need treatment. They go out to the forensic center, they're treated, and they move on from there. These are not casual disabilities that these five people face. There is a history of them being found unfit, but there's also a history of them with proper care being restored to fitness. Once they're restored to fitness, they're able to cooperate with counsel, they're able to understand the nature of the proceedings that they are facing, they're able to have decisional capacity to exercise the seven rights that are statutorily granted to them under the SVP statute. Without being restored to fitness, they can't do any of that. They don't understand why they're in court. They don't understand how to make decisions. They don't understand how to cooperate with counsel. With regard to the cooperation with counsel aspect, that's critical. Some of these cases go back 20 years that are being used to institutionalize them. The court is familiar with the record-keeping system in Cook County. It's not entirely reliable going back 20 or 30 years. For example, Mr. Weakley's earliest case took place in 1981. To try and reconstruct those records is impossible. What would be very helpful would be to communicate with Mr. Weakley and have him tell us. At a commitment trial, it's not your burden. It's the state's burden. It is. To present all that evidence. And if they don't have that evidence for the same reasons you've just identified, that record-keeping is very poor, then presumably they wouldn't have that evidence regarding what happened in 1981. And 1981 wouldn't be an issue. Well, the nature of the evidence is a little bit different, though, in a civil commitment proceeding. What the state does historically in these proceedings, and what they're allowed to do is put two experts on the stand, one from Illinois Department of Corrections and one from Department of Human Services, that has done either a personal interview and a records review or just a records review. Are they able to even go forward with those personal interviews of the detainees, given that you believe that they are unfit to even communicate with counsel? In two of those instances, with regards to Mr. Hatter and Mr. Edwards, the Illinois Department of Corrections evaluator declined to engage the respondents in an interview. So what happens on those two cases? Does that mean that the state cannot go forward with its commitment trial? No, it does not. There are cases, I'm sorry to interrupt, but there are cases where the individual whose commitment is being sought declines to refuse. That's correct. So, I mean, is that any different when here we have a situation where the person can't be interviewed? It's manifestly different because those individuals had the option to refuse. They chose to refuse. In this particular situation, the two individuals that I referred to, Mr. Edwards and Mr. Hatter, were not interviewed by the Illinois Department of Corrections evaluator because the evaluators thought that they were unable to understand the nature and import of the advice of rights and waiver form. So they didn't even attempt to engage them. So at that point, we've got the Illinois Department of Corrections engaging in governmental action, declining to interview the respondents and depriving them of their right to talk to them based on the psychologist's assessment that these people are too disabled to talk to. For example, Mr. Edwards was actively responding to internal stimuli, as was Mr. Hatter, as they sat there talking to the doctor. And this was in Illinois Department of Corrections, in a place where you would have hoped that they were getting some sort of at least management medication to keep that from happening, but it wasn't. Is there any evidence that they could be restored to fitness? Yes. What evidence? The evidence is that four out of the five that have previously been found unfit to stand trial were restored to fitness. It's important to note that the first element of commitment under the SBP Act is that the respondent be previously convicted of a sexually violent offense. In order to be convicted of that sexually violent offense, it's necessary to be fit. So four out of the five individuals have already been remanded for treatment, for restoration treatment. We all know the differences between a criminal trial and a civil commitment action. In a criminal trial, the person is presumed innocent and all the other constitutional protections that are there. You don't have the same sort of constitutional protections on a civil commitment except to those that are statutorily enumerated. And you've listed the seven. But this pretrial fitness determination isn't among them. And the question is maybe the legislature needs a trial like this, if one should ever go forward, and reveal to it that a trial of an unfit defendant is inherently unfair and unjust, and maybe that would trigger action that would provide for a fitness hearing pretrial. Because right now the argument is, at least that's how I understand it, that as a matter of law, there isn't a provision for this. And that's certainly what the circuit court judge ruled. Well, there is not a statutory provision for this. But in reading, for example, the United States Supreme Court case, versus Oklahoma, they found the right to be fit before a criminal proceeding to be rudimentary. That any other right that you have is illusory. There's no question about that. But that's the Supreme Court statement involving a criminal trial. That's correct. And if we look at the standards and if we look at what these particular respondents are facing, their liability is far more egregious than a criminal's liability, than a criminal defendant's liability. One of the things that is incredible. I don't know about that statement, because to some extent they've earned the certain consequences that have befallen them by virtue of prior conduct. Are you referring to the SVPs or the criminals in Cooper? I'm referring to the SVPs. Okay. While they have earned that, they have not earned it under the statutory scheme that is our SVP commitment. Well, what is your best argument for the statutory right? Because the legislature specifically took out the language that afforded individuals all rights that they would have to a criminal defendant. They took that out. So, I mean, statutorily we would normally interpret that to mean that they made a conscious decision to remove any right to fitness hearing because it's not one of the seven delineated rights. That's correct. But the rights that they did reserve to the respondents, for example, the right to decide whether they wanted to testify or not, the right to decide whether they wanted to have a jury trial, the right to decide whether or not they wanted to have an evaluation, those rights cannot be exercised by someone that is in the mental state of these five respondents. But a number of cases. I'm sorry. There are a number of cases that we can look to that basically tell us that we're not going to be adding something that the legislature specifically wanted to take out in this civil commitment scenario. There is no indication, however, that the legislator wanted to strip away the right to fitness. The statute as it stood before simply said that respondents should have all rights that accrue to a criminal defendant. All rights. Couldn't they easily include, and isn't your argument best made to the legislature to try to convince them that this should be a provision that should be specifically put in to say we want fitness hearings? I mean, this is something that's best left to the legislature because it appears as if they've decided that for these civil commitment proceedings that's not something that they want to have at this juncture. I would not disagree with the court on that. It's clear that they enumerated seven specific rights. However, those rights always have to comport with procedural due process. Well, let's go to procedural due process. A number of cases from outside of Illinois have addressed the issue that we're confronting today. And, in fact, isn't there an appellate court case that basically has resolved this issue as well, although it's not a First District case? No, I think the court's referring to the Akers case out of the Fourth District. Yes, you're saying that they didn't really talk about this issue at all? Not in the procedural due process context, no. In the statutory context? The primary impact of their ruling was twofold. One, they said, and that was not an SVP case, that was a sexually dangerous person's case, which differs significantly from a sexually violent person's case. In that particular case, what the Fourth District said was this is a criminal case, you don't have any procedural due process rights. I'm sorry, I misspoke. They said it was a civil case happening in a criminal environment. And, as such, there is no procedural due process. That predated the Illinois Supreme Court case in Boatroof, where it says, no, you do have procedural due process rights, and they have to be analyzed under the Matthews v. Eldridge United States Supreme Court analysis. Okay. So under the Matthews factors, there's three, right? That's correct. And as far as the first two. If I could return to Akers just for one second. The other part of their decision was that they commingled all mental diseases. The SVP Act does not do that, and that's critical here. The SVP Act, the second and third elements of the requirements to be found in SVP, they do say you have to have a mental disease or defect, but it has to be that mental disease or defect that puts you at risk to reoffend. Yes. I'm sorry? And so? Well, the mental diseases or defects that these people are suffering from that are causing them to be unfit are not paraphilia or pedophilia. Those are the things that cause people to reoffend. Yes. So your point is? My point is that Akers commingled any mental disease and said that under the SDP Act, any mental disease would be fine. The SVP Act does not. Your mental disease must be specifically tied to your act. And what about the other out-of-state cases that have resolved procedural due process against the position you're taking? A couple of things to consider there. The majority of those cases did not do a Matthews analysis because they did not proceed by way of a procedural due process claim. They resolved it simply on that this is a civil case, we're not going to do anything else. The three states that did resolve it on a Matthews claim would be California, Washington, and I believe Massachusetts. All of the SVP statutes in those states are different. For example, in Washington you have to have a pre- Was there a Wisconsin case? There was a Wisconsin case. I don't believe that that case used a due process analysis. That would be Latrell. So what we've got here is our own unique statute. And if we turn to the reasoning, for example, in Moore, which is the, excuse me, what Moore can follow. You're probably getting away from the argument, though, if you're saying that these three other cases turned on the uniqueness of their SVP legislation and you're now looking at the legislation here, aren't you, in fact, getting away from the due process or procedural due process protections under the Constitution so that it now becomes a statutory analysis and not procedural due process? No, not at all. I'm just distinguishing between Illinois and the decisions in Moore, Morgan, and Nieves. And you really think these other statutes from out of state are that different than the idea behind the statutory enactment we have in Illinois? Without a doubt because the Washington statute allows people that have not been convicted of a sexually violent offense to be remanded as an SVP. In Illinois, that's the first element. What about the other two states? The other two states are similar but also have differences. Okay. Now, with regard to the due process analysis that Your Honor asked about, with regard to the first part of that analysis, is there a private interest at stake? I think we can get past the first Matthews factor. Then we come down to the erroneous deprivation of liberty. If I, as a trial lawyer, am unable to talk to my client who is facing perhaps lifetime commitment, there is a significant chance of erroneous deprivation of liberty. If he cannot make the choice to go in and have a jury trial or a bench trial, if he can't decide whether he wants to testify or not, the risk of erroneous deprivation of liberty is very high. That was the factor that was used in analyzing the case in Cooper where they called the right to be fit rudimentary. Yes, in a criminal case. In a criminal case. That's correct. And while the court isn't concerned about it being a criminal case, as I said before, the penalties here are much higher. And for one very important reason, the only way to get discharge or conditional release from the DHS is to complete treatment. Except the review is annual. It is. And at any point during that review, if the individual has in fact demonstrated sufficient progress on the pedophilia or whatever basis he was declared a SVP, it no longer is a lifetime commitment. It is simply annual, a year to year commitment until that progress is made. I absolutely agree. And the court can do that at any time. Not only is there this annual. No, a court can determine that a hearing can be had. Yes. The statute allows for that. That's correct. So at any time that a lawyer might suggest to that judge that this is something we should be doing now, the court can obviously grant that request. Well, there's a two-step process. The court first has to make a finding of probable cause to believe that the respondent is no longer a sexually violent person. Yes. But the only way, though, that we're ever going to get to the point of a person not being sexually dangerous, sexually violent, really, is for them to receive treatment. That's correct. And they will never receive that treatment if they remain, as you say, unfit. That's correct. And that's why I use the phrase it's a possible lifetime commitment. For example, Mr. Hatter has been in Department of Human Services custody at the treatment and detention facility for 10 years. Let me tell you the problem that I have. Yes, sir. It started with the question that I asked you before. You know, what evidence did you have that these people could be restored to fitness? And you told me, well, you know, they had been restored previously, some of them. That's not evidence. Evidence to me is a psychiatrist who will testify that that person could be restored to fitness based on things, you know, medical understanding that's accepted. That's correct. But that wasn't given to us. And that's why we are here on a Rule 308 appeal, because it wasn't given to us. We asked for a fitness evaluation. Well, you don't need that just on a fitness evaluation. You had certain evaluations here. You could get that type of determination from the people who examined it. Unfortunately, under the statute, that's not allowed. Evaluations under the statute, and it's interpreted narrowly, are just to determine whether they are a sexually violent person. I would suggest that both of the psychologists that made findings on the two individuals that they did not interview actually went beyond the statute. Because the one, Dr. Saflias, with regard to Mr. Hatter, said Mr. Hatter should remain in the Department of Human Services where he was previously committed under a civil commitment by Illinois Department of Corrections. But was anything done to be able to obtain such an opinion? Yes. We asked for the opinion at the trial court. We asked for a fitness evaluation because we had a bona fide doubt. Well, I'm talking about an opinion to show that they could be restored to fitness. The only way to get that opinion is through a fitness evaluation. That is what a fitness evaluator will do. It will say whether they can be restored to fitness within a year. And then if they can't be restored to fitness within a year, other than the criminal code or the mental health and developmental disabilities code. So I would agree with Your Honor. I would have loved to have an evaluation determining fitness with these respondents that was denied to us by the trial court. So I don't have that evidence to present because we were precluded from adducing that evidence. Okay. You'll have time. Thank you. Good morning. My name is Kathy Saunders. I'm Assistant Attorney General on behalf of the people. Although this is a matter of first impression in the state of Illinois, people would urge this court to follow the three other jurisdictions, the three foreign jurisdictions, Massachusetts, California, and Washington, to conclude that respondents in a civil commitment proceeding do not have a procedural due process right to fitness. And when we look at the Matthews factors, every court to look at it, all three courts have concluded that the first factor, the respondent's liberty interest weighs in their favor, but that the respondent's liberty interest is substantially outweighed by the remaining two factors. The risk of erroneous deprivation, and after all, that's what due process is about, right? We want to, the function of legal process is to minimize the risk of erroneous decisions. And the risk of erroneous deprivation in an SBP proceeding, it's like given the nature of the proceedings, adversarial nature, as well as the procedural safeguards in place. First of all, before a petition is even filed, the act assures by selecting only those most sexually violent, only those most dangerous offenders will be committed. Anyone, of course, who's been convicted of a sexually violent offense receives a file review shortly before they're released. Some smaller portion of those persons is referred for a further interview. The procedure, again, we're funneling down the window, and from that point they're recommended to either the state's attorney or the attorney general for prosecution. Again, prosecutorial discretion comes in there and makes that number even smaller. So before a petition is even filed, we've written up the number of potential candidates for commitment to a very, very small percentage. Once a petition is filed, of course, we have the initial review for the order of detention, the probable cause review, and all of the Section 25 rights, the trial rights in the act. Let me ask you this. Is your office or through the local state's attorney's office comfortable with proceeding with a civil commitment trial before a jury perhaps when the defendant, when you can't say and no one can say that the defendant is fit to stand trial, is your office comfortable with going forward with that? Yes, sir, because it begs the question, I think, whether they even have that right. That's what we're here today to decide. Well, aside from the right, I mean, I'm just talking about generally trials in general. I mean, you would think that a trial is there as juries are known, voir dire, finders of fact. But how do you find a fact when the source of that fact is unavailable to you or at least part of the source of that fact is unavailable to you? And certainly it's unavailable when the defendant is not fit or is unavailable even to go through an evaluation for purposes of a civil commitment, much less a fitness. And we say that, no, we won't allow you to evaluate fitness because it isn't provided for in the statute, but a trial is provided for in the statute. And that raises the question, I thought, do you feel comfortable going to trial with an individual that you're not sure is fit at all? Yes, Your Honor, because SPP commitment is, remember, we have to keep in mind it's just another form of civil commitment, much like involuntary commitment. Well, that raises the question, but why not go that route? If that's the route you think is identical to this, why not go that route? Because there are differences, and certainly the differences in terms of the consequences of being labeled a sexually violent person by a jury. The legislature has determined, has given the state this authority. Well, you have to concede that the legislature really didn't consider the situation where the accused or the defendant, the civil defendant, is unfit for trial. The legislature didn't address that particular situation, did it? Did not address it specifically. And, again, we have to keep in mind it. But did the legislature tell us that this is a civil proceeding? Pardon me? Did the legislature tell us in the language of this Act that this is, at its heart, a civil proceeding? Absolutely. That's right in the Act itself, that proceedings under this Act are governed by the Civil Procedure Act. And is there any authority that you're aware of that would guarantee the right to be fit for a civil proceeding? None, Your Honor. The substantive due process cases, the Wisconsin case, Littrell, Cubbage, the substantive due process cases, none of those courts that have looked at this issue as a matter of substantive due process have found a substantive due process right to be fit in a civil commitment proceeding. And, again, as Your Honor mentioned earlier, the legislature, when the SBP Act was originally enacted, of course, it contained, it gave to the respondents in these civil commitments proceedings all the rights of a criminal defendant. But they took that language out in 2001. And the question is whether the legislature anticipated it. But then Senator Obama, during the legislative debates, pointed out to the fellow members of the Senate that, look, these rights were in there, and we are taking these rights away from these civil respondents. I mentioned that there was another avenue to commit an unfit person into civil custody. And I'm just curious about whether in that context, in that proceeding, there's a provision for an unfitness hearing to determine whether or not that person should, in fact, be committed civilly. And the judge would say, I'm committing this person civilly for 48 hours, 72 hours, or some short period of time, until I can be persuaded that he's a threat to himself or to others. And, of course, you do that by way of an evaluation. And the problem here is that they're saying, no, we don't even want to provide you with that information for purposes of being labeled a sexually violent person, which has, as counsel indicated, far greater consequences. I mean, there's no question. There was no question about it. I'm sorry. But I'm just wondering. In respect to that, many of these same rights guaranteed to SBP respondents under the Act, under Section 25, are also given to those involuntarily committed. My point was, in an involuntary commitment context, isn't there an evaluation for fitness or for? No, there's no evaluation for fitness. Initially, the petition for involuntary commitment has to be approved by a certificate. Right. There's a certificate, but isn't there an evaluation at some point that blends into fitness? Within 72 hours, there has to be an additional certificate. There have to be two certificates within that 72-hour period, yes. But, of course, you have to remember here that these respondents are interviewed. They're given a file review. So this exam, yes, they have an exam under the SBP Act, but it occurs at DOC first with the initial file review, and then those that are referred get a psychological interview and are further recommended. And then, of course, we do have, within 72 hours generally, unless the respondent waives it, we do have the probable cause finding. So the same procedural protections are in place. The most important factor, of course, is the state's interest in providing treatments for the respondents and in protecting the public from those whose mental disorders. It would seem to me that if the state has an interest in providing treatment for the respondents, that treatment would include getting the person fit, getting those who are unfit fit for a trial. And yet you're saying that, or they're saying that they're not receiving any kind of fitness. I'm not aware of that. I don't believe that's a matter of record. I don't doubt Ms. McCoy, but I don't believe that's a matter of record. I cannot speak to that. But, again, that presumes the right to fitness. They also have the interest, the state's interest, in protecting the public from those whose mental illnesses, mental disorders predispose them to commit future acts of sexual violence. The state's interest in protecting the public is paramount. So you believe there's no difference between protecting the public by having an unfit respondent, you're protecting the public either way, whether the person is unfit or whether the person is really a sexually violent person, which you cannot conclude without being fit. That's what I mean. I disagree that you cannot conclude that they are a sexually violent person. That's why I disagree, because we already have factually, we already know because the statute requires a prior sexually violent offense conviction, we already have it. That's been determined either by respondents guilty plea or there's been a trial. So we know that we have that element. And we can determine from, even if the respondent can't interact particularly well with the interviewer, from that we are able to gauge his mental state. What if the jury decides, hmm, it's your proof beyond a reasonable doubt. The respondent isn't fit. That's their argument. We have reasonable doubt that he really is fit. Therefore, we can't say that he's a sexually violent person. It's a not guilty filing. Is that a risk that your office is willing to accept? The jury would never be instructed about fitness. Well, no, I'm not saying instructed. I'm saying argument. I'm not saying that they're going to be instructed on fitness. I'm saying that's the argument that they're going to put forward, that it's your burden, proof beyond a reasonable doubt, that this person is a sexually violent person. And they're saying, you know what, we don't have a doctor coming in and testifying because the guy is not fit according to the doctors to be even evaluated. And we have doubt, we have a reasonable doubt that he's a sexually violent person and there's an NG. And then that ends, I think it ends forever, the sexually violent classification of this individual. And if he's restored to fitness, then he's released and then he's out in the society and who knows what can happen. I disagree that that risk would happen because, again, the personal interview with the respondent, the doctor's interview with the respondent, is such a small portion of relevant university information, even in making their diagnosis. These diagnoses of mental disorders require that many of these conditions have persisted for a length of time. And so there's file review and history review and social and educational review. You see records. Many of the respondents have significant disciplinary records in DOC. All of this information informs the doctor's decision such that the personal one-on-one interview with the respondent is a very small portion of that university knowledge. Ms. Saunders, tell us, the initial decision on whether to seek this commitment is not based upon some evaluation necessarily of the defendant, is it? Or is it? You tell me. We have the offense that's been established. Correct. But the other prong of the statute is that the mental disease or defects makes it likely that the person will re-offend. Correct. Yes, the prior sexual violence conviction is just one element. So how is that initial determination made? Is it always made with some examination of the defendant or not? The determination whether to go forward? To go forward, yes. The initial decision to go forward to ask for this probable cause determination. It's just as in any other decision. It's a matter of reading the recommendations from the DOC doctor. Yes. And looking at the strength of the evidence and whether the state has a good basis to proceed on the petition. So it doesn't really necessarily involve some examination with the offender in the first instance? The decision to go forward on the petition, no, it does not. All right. The state also has an interest in minimizing financial administrative burdens here. I mean, it's not a simple matter. I know I'm running out of time, but it's not a simple matter. It's grafting Article 104, the Code of Criminal Procedure, onto these proceedings. They simply, there's no match. And if every respondent is required to be fit in the initial phase, what about at the six-month and yearly re-evaluations? And we're creating this entire potential scheme here for which we have no control. Balancing all three of the matters factors, the three courts that have looked at this have held that the respondent's liberty interest, although weighty, was substantially outweighed by the remaining two factors. And we urge this Court to follow those well-reasoned decisions. Okay. Thank you very much. Let's have a short response. Yes, sir. May it please the Court, Matthew Daniels on behalf of the appellants. Your Honors, contrary to the state's assertion, sexually violent persons commitment is not just another form of civil commitment in Illinois. And that's clear from the law itself that currently exists. The Illinois Supreme Court in Samuelson has indicated that the sexually violent persons commitment act involves extended incarceration. That's something that the appellate courts, including this district, has reaffirmed. That is something that no Illinois court has ever said about a mental health code situation. Additionally, if one looks at the administrative code regulations for the  disciplinary measures for individuals that don't exist in the context of regular civil mental health commitments, and it goes so far to allow in the instance of a respondent who is looking to escape that you are allowed under the sexually violent persons act to actually use the force. That's something that's not allowed in the civil commitment scheme that we have under the mental health code. If there are already under law those sorts of recognitions that criminal sorts of procedures and mechanisms may be used, there is no reason that the procedures, well-established mechanism that exists under the criminal code for handling fitness procedures should also be used here. Contrary to what the state says, it is a match. The state says there wasn't a match. It's brief. They said so here, but they never said why there wasn't a match. But you can see that this would be a case of first impression. Absolutely. All right. Thank you. Thank you very much. A very interesting case. The briefs are very good. The arguments are very good, and we'll take the case under advisement.